UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CEDRICK DIXON # 511099, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:14-01214 |
| | ) | Judge Campbell/Brown |
| DARON HALL, ET AL., | ) | |
| Defendants. | ) | |

To:  The Honorable Todd Campbell, United States District Judge.

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that: 1) the motions to dismiss filed by Sheriff Daron Hall and defendant Patricia Young (Docs. 25, 55) be **GRANTED**; 2) this case be **DISMISSED** as to defendant Dr. Roberta Burns for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); 3) plaintiff's motion to amend (Doc. 134) be **DENIED**; 4) all other pending motions be **TERMINATED AS MOOT**; 5) dismissal of this case count as a "**STRIKE**" under 28 U.S.C. § 1915(g); 6) acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; 7) any appeal **NOT BE CERTIFIED** as taken in good faith under 28 U.S.C. § 1915(a)(3).

## I.  INTRODUCTION
and
BACKGROUND

Plaintiff was arrested on March 17, 2014.  (Doc. 1, ¶ IV, p. 3 of 5)[1]  Plaintiff claims that the arresting officer "pulled [his] right shoulder out of place."  (Doc. 1, ¶ IV, p. 3 of 5)

Plaintiff asserts that he reported his injury to the nurse when he was transported to the Criminal Justice Center (CJC) in Nashville, and that the nurse provided him with "pain pills" and

---

[1]  The page numbers referred to herein are to those assigned by the court's CM/ECF system.

a "medical form" to complete. (Doc. 1, ¶ IV, p. 3 of 5) The nurse allegedly told plaintiff that it would take forty-eight hours to x-ray his shoulder. (Doc. 1, ¶ IV, p. 3 of 5) Plaintiff avers that, when he did not hear from medical within forty-eight hours, he waited seven days then filed a grievance "because no one x-rayed [his] shoulder so they could put it back in place." (Doc. 1, ¶ IV, p. 3 of 5)

Plaintiff asserts that he filed another "medical form" on March 29, 2014, but was informed by Nurse S. Darren that x-rays and surgical procedures were not performed at CJC. (Doc. 1, ¶ IV, p. 3 of 5) Plaintiff claims that he spoke with his case manager on the matter, but was informed his grievance was not on file and that he needed to file another one. (Doc. 1, ¶ IV, pp. 3-4 of 5)

Plaintiff claims that he filed another grievance on April 19, 2014. (Doc. 1, ¶ IV, p. 4 of 5) Plaintiff avers that he also filed another "medical form" that same day because he still had not heard from medical, and because the pain pills he had been given made him "dizzy and vomit." (Doc. 1, ¶ IV, p. 4 of 5)

Plaintiff maintains that no one responded until May 7, 2014, when he was given "more pain pills" and his arm was put in a sling. (Doc. 1, ¶ IV, p. 4 of 5) According to plaintiff, Nurse Darren told him on May 7th that Dr. Burns did not want to see him "because no one [at CJC] c[ould] put [his] right shoulder in place, and [that] it w[ould] cost to[o] much money to send [him] to the hospital." (Doc. 1, ¶ IV, 4 of 5) Plaintiff asserts that he filed another grievance that same day. (Doc. 1, ¶ IV, p. 4 of 5)

Plaintiff alleged at the time he filed his complaint that he had not yet received a response to his grievances, that CJC medical still will not see him even though he "constantly" submits "medical forms," and that he had filed four grievances since March 29th. (Doc. 1, ¶ 1V, p. 4 of 5) Plaintiff also claims that his "brother and girlfriend contacted the Sheriff," but "the Sheriff" told them that "no one got his medical forms or grievances." (Doc. 1, ¶ IV, p. 4 of 5) Finally, plaintiff alleges that

2

he was told by Nurse Darren that medical was not going to see him, and to get his shoulder fixed when he was released. (Doc. 1, ¶ IV, p. 5 of 5)

Plaintiff is suing Sheriff Hall, defendant Young of Correct Care Solutions (CCS), and Dr. Burns because, in plaintiff's words, "they are the Bosses." (Doc. 1, ¶ III.c, p. 3 of 5) Plaintiff seeks injunctive relief and money damages. (Doc. 1, ¶ V, p. 5 of 5)

## II. PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a pre-trial detainee at CJC. He filed this action on May 22, 2014[2] under 42 U.S.C. § 1983 alleging violations of his rights under the Fourteenth Amendment.[3] (Doc. 1)

The District Judge entered an order on May 27, 2014 directing that process issue, and for the custodian of plaintiff's inmate trust fund account comply with the Prison Litigation Reform Act (PLRA) regarding the payment of filing fees.[4] (Doc. 3) The District Judge also referred this action to the Magistrate Judge with the following instructions:

> [E]nter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and . . . conduct further proceedings, if necessary, under Rule 72(b), Fed.R.Civ.P., and the Local Rules of Court. The Magistrate Judge may recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2).

---

[2] Plaintiff signed his complaint on May 13, 2014. The postmark on the envelope in which plaintiff mailed to his complaint to the district court is postmarked May 21, 2014. Under the mailbox rule, May 21st is the date that plaintiff is deemed to have filed his complaint. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008)(citing *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002)).

[3] Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment's prohibition against cruel and unusual punishment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *See Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014). Such claims are "analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013)(citation omitted).

[4] Such orders do not include a copy of the complaint, and Sheriff Hall was the only defendant identified by name and/or position in the order.

(Doc. 3) Process was served on Sheriff Hall on June 13, 2014, and both defendant Young and Dr. Burns on June 17, 2014. (Docs. 12, 14, 16)

Defendant Young filed a motion to dismiss on July 15, 2014 for failure to state a claim. (Docs. 25-26) Defendant Young argues that plaintiff failed to "allege[] facts as to how she was involved or responsible for the alleged violation of [plaintiff's] rights." (Doc. 26, ¶ II, p. 2) Plaintiff filed a response on July 24, 2014 and again on August 7, 2014. (Docs. 36, 68)

On July 29, 2014, the Magistrate Judge entered an order notifying plaintiff that he had until August 15, 2014 to amend his complaint should he wish to do so. (Doc. 47, p. 1) Plaintiff filed a motion to amend on October 23, 2014. (Doc. 134)

Dr. Burns answered the complaint on July 30, 2014. (Doc. 46) In her answer, Dr. Burns argues, *inter alia*, that "Plaintiff's complaint fails to state a claim on which relief can be granted." (Doc. 46, ¶ 7, p. 2) Dr. Burns has not filed a dispositive motion.

Sheriff Hall filed a motion to dismiss on August 5, 2014, also for failure to state a claim. (Docs. 55-56) Sheriff Hall argues that plaintiff "fails to allege that [he] was involved in the alleged inadequate medical care." (Doc. 56, ¶ II, p. 2) Plaintiff filed a response on August 13, 2014 and again on August 18, 2014. (Docs. 72, 81)

Plaintiff filed a motion for summary judgment on August 6, 2014. (Doc. 65) Defendants filed a response in opposition on August 14, 2014 (Doc. 74), and plaintiff replied on August 29, 2014 (Doc. 92). Plaintiff did not file a concise statement of facts with his motion for summary judgment as required by Local Rule, LR56.01(b). However, treating plaintiff's August 29th reply (Doc. 92) as such, defendants filed a response on September 12, 2014 (Doc. 103), to which plaintiff replied on September 22, 2014 (Doc. 110).[5]

---

[5] Plaintiff has since filed numerous motions: a motion to compel (Doc. 115), to which defendants have responded (Doc. 128); a motion for confidentiality and restrictions (Doc. 117); a motion to appeal the initial case

This matter is now properly before the court.

## II. ANALYSIS

### A. Actions Under § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; <u>and</u> 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *see Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### B. Motion to Dismiss

An action brought in federal court may be dismissed for failure to state a claim on which relief may be granted. Rule 12(b)(6), Fed. R. Civ. P. In assessing a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 403 (6th Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)(internal quotation and citation omitted)). A motion to dismiss under Rule 12(b)(6) "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007)(quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)(internal quotation and citation omitted)). Review under Rule 12(b)(6) is limited to the pleadings. *See*

---

management order (Doc. 119); five motions for temporary restraining orders (TROs) (Docs. 123-27), to which defendants have responded (Doc. 133); three motions to appeal the denial or prior orders (Docs. 129-31); and, as noted at p. 4, a motion to amend (Doc. 134).

*Tellabs, Inc. v. Makor Issues & rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).

### C. Argument

#### 1. Sheriff Hall and Defendant Young

The crux of the motions to dismiss filed by Sheriff Hall and defendant Young is that plaintiff failed to provide any factual allegations against them. A plain reading of the complaint shows that the only reference to Sheriff Hall in the statement of the claim (Doc. 1, ¶ IV) is that he allegedly told plaintiff's brother and girlfriend that, as noted above at p. 2, "no one got [plaintiff's] medical forms or grievances." Defendant Young is not mentioned at all in the statement of the claim.

Taking as true plaintiff's allegation that Sheriff Hall told plaintiff's brother and girlfriend that "no one got [plaintiff's] medical forms or grievances," the statement alleged does not constitute a violation of a right secured by the Constitution or laws of the United States. It is merely a statement and nothing more. As for defendant Young, lacking any factual allegations in the statement of claim, plaintiff's claim against defendant Young is wholly conclusory. Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the courts are not willing to "abrogate basic pleading essentials in *pro se* suits," *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(internal citation omitted). Nor are the courts required to conjure up unpled facts to support conclusory allegations. *See Martin v. Overton*, 391 F.3d 710 (6th Cir. 2004)(citations omitted).

As shown above, plaintiff has failed to allege and show that Sheriff Hall and defendant Young deprived him of a right secured by the Constitution or laws of the United States. Having failed to satisfy the first part of the two-part test to state a claim under § 1983, plaintiff has failed to make a *prima facie* showing under § 1983. Accordingly, the motions to dismiss filed by Sheriff

Hall and defendant Young for failure to state a claim should be granted as pled.

Although Sheriff Hall and defendant Young do not address this point in their motions to dismiss, the Magistrate Judge notes that plaintiff stated in his complaint that he is suing Sheriff Hall and defendant Young because "they are the Bosses." (Doc. 1, ¶ IV.C, p. 3 of 5) Although plaintiff does not address the point further in his complaint, it is apparent that his theory of liability includes that Sheriff Hall and defendant Young are liable to him for the acts and/or omissions of those in their charge under the doctrine *respondeat superior*. Title 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and the order of referral permit the Magistrate Judge to address this issue *sua sponte*.

The law is settled that actions brought against state actors cannot be maintained on a theory of *respondeat superior, see Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Monell v. Dept. of Social Serv's of The City of New York, et al.*, 436 U.S. 658, 659, 691-95 (1978); *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013), unless those state actors "directly participated" in the alleged violations of the plaintiff's constitutional rights, *see Flagg*, 715 F.3d at 174; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). For vicarious liability to attach here, plaintiff must demonstrate that Sheriff Hall and defendant Young "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct if not carrying it out [themselves]." *Flagg*, 715 F.3d at 174 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Plaintiff does not allege, nor can it be liberally construed from the complaint, that Sheriff Hall and/or defendant Young were <u>personally</u> responsible for any of the acts or omissions alleged in the complaint, *i.e.*, that they encouraged, directly participated in, authorized, approved, or knowingly acquiesced in the acts/omissions alleged. Nor does plaintiff allege that Sheriff Hall and/or defendant Young acted pursuant to any policy or custom that violated his constitutional

7

rights. *See Collins*, 503 U.S. at 122; *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). Consequently, neither Sheriff Hall nor defendant Young are liable under the doctrine of *respondeat superior* and, as such, the complaint against them is subject to dismissal for this reason as well.

### 2. Dr. Burns

As previously noted at p. 4, Dr. Burns has not filed a dispositive motion. Here too, however, §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and the District Judge's order of referral permit the Magistrate Judge to review plaintiff's claims against Dr. Burns *sua sponte*.

First, to the extent that plaintiff is suing Dr. Burns under the doctrine of *respondeat superior* because she was the <u>boss</u> of those who worked in CJC medical (Doc. 1, ¶ III.C, p. 3 of 5), the complaint is subject to dismissal under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for the reasons stated above in the analysis of that same claim against Sheriff Hall and defendant Young. The Magistrate Judge turns next to whether Dr. Burns is liable under § 1983 on other grounds.

As previously noted at p. 2, plaintiff alleges that Nurse Darren that him that Dr. Burns did not want to see him because no one at the jail was able to put his shoulder back in place, and that it would cost too much money to send him to a hospital. The Magistrate Judge assumes for the sake of argument that this bare-bones allegation suffices to establish a colorable claim under the Fourteenth Amendment. For the sake of completeness, the Magistrate Judge also will address this issue in the context of plaintiff's numerous allegations of negligence and medical malpractice prominent in his subsequent pleadings. (*See e.g.*, Doc. 77, pp. 2-3 of 5; Doc. 79; Doc. 80, p. 2 of 3; Doc. 81, pp. 1 of 3; Doc. 84 p. 4 of 7; Doc. 93, pp. 1-2 of 11)

Addressing plaintiff's allegations of negligence and malpractice first, the Supreme Court has held that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or be 'repugnant to the conscience of mankind.'" *Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976).  In other words, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *see Rouster v. County of Saginaw*, 749 F.3d 437, 446-47 (6th Cir. 2014)(citing *Estelle*, 429 U.S. at 106).  Complaints of malpractice also are insufficient to entitle a plaintiff to relief.  *Estelle*, 429 U.S. at 105-06; *see Rouster*, 749 F.3d at 447.  Thus, to the extent that plaintiff alleges that Dr. Burns was negligent and/or committed medical malpractice, even taking those allegations as true, such claims do not constitute grounds for relief under § 1983.

Turning to the final question, *i.e.*, whether Dr. Burns was deliberately indifferent to plaintiff's serious medical needs, the law is well established that a prisoner's difference of opinion regarding diagnosis or treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107.  Moreover, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts will not second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law.  *Berryman v. Rieger*, 150 F.3d 561, 565 (6th Cir. 1998)(citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).

Defendants have provided medical records for the period in question in response to the document that defendants construed as plaintiff's concise statement of facts.  (Docs. 94, Ex. 1-24; Doc. 103, Ex. 2, 5)  These records, covering the period March 18, 2014 through August 18, 2014, are summarized below.

Plaintiff reported "severe pain in his right arm" to the CJC medical staff on March 18th, and Tylenol was prescribed for that pain the following day, *i.e.*, on March 19th.  (Doc. 103, Ex. 2, pp. 30, 52 of 65)  Plaintiff was instructed on March 19th to "rest for a few days," to "refrain from additional activity," and to "return for revaluation if the problem d[id] not resolve over the following two days

9

or [if it] worsen[ed]."⁶ (Doc. 103, Ex. 2, p. 26 of 65) Thereafter, plaintiff was scheduled for a physical exam on March 21ˢᵗ – two days after he had been instructed on March 19ᵗʰ to return in two days if he continued to have problems – but the exam had to be rescheduled because plaintiff was in court on March 21ˢᵗ. (Doc. 103, Ex. 2, p. 24 of 65)

There is a gap in the records from March 21ˢᵗ until May 7ᵗʰ. The Magistrate Judge takes as true the alleged events discussed above at pp. 1-2 between March 21ˢᵗ and May 7ᵗʰ, *i.e.*, that: Nurse Darren told plaintiff on March 29ᵗʰ "they can[']t do surgical procedure[s] at [CJC] because they don['] do x-rays"; plaintiff's case manager told him there were no grievances on file; plaintiff filed another "medical form" and grievance on April 19ᵗʰ; Nurse Darren saw plaintiff on May 7ᵗʰ at which time plaintiff was given more pain pills and a sling.

Turning back to the medical records before the court, plaintiff requested an x-ray of his shoulder on May 7ᵗʰ, and one was completed two days later on, May 9ᵗʰ. (Doc. 103, Ex. 2, pp. 23, 37 of 65) The x-ray revealed "**[q]uestionable** nondisplaced fracture of the greater tuberosity of the humerus."⁷ (Doc. 103, Ex. 2, p. 37 of 65)(emphasis added)

A CJC *Acute Care Visit* report dated May 27ᵗʰ shows that the May 9ᵗʰ x-ray was reviewed, and plaintiff was given sling. (Doc. 103, Ex. 2, p. 62 of 65) Examination that date revealed no gross deformity, no spasms, limited range of motion, but no crepitus. (Doc. 103, Ex. 2, p. 63 of 65) Physical therapy and medication were prescribed, and plaintiff was instructed to return to the Acute Care clinic in 30 days. (Doc. 103, Ex. 2, p. 65 of 65)

A second x-ray was made of plaintiff's shoulder on May 29ᵗʰ with the following findings

---

⁶ A CJC *Muscular Aches* report dated March 19, 2014 noted that plaintiff "ha[d] been putting numerous sick calls for similar complaints." (Doc. 103, Ex. 2, p. 25)

⁷ In a non-displaced fracture, the bone cracks either part or all of the way through, but the bone does not move and maintains its proper alignment. The "greater tuberosity" is the large part of the upper arm bone located at the shoulder.

noted: "Again noted is the mild to moderate curvilinear bony density adjacent to the lateral margin of the proximal humerus . . . **without evidence of discrete fracture line, overall stable**. Negative remaining bony structures. Mild AC joint osteoarthritis. Negative soft tissues . . . ." (Doc. 103, Ex. 2, p. 36 of 65)(emphasis added) The impression reported was that the imaging "could represent bony bridging and callus or calcific tendinitis." (Doc. 103, Ex. 2, p. 36 of 65)

A third x-ray made on June 11th was essentially the same as the first two, differing only in that it reported the joint spaces, soft tissue, bone mineralization were all "normal," and that there were no foreign bodies. (Doc. 103, Ex. 2, p. 35 of 65)

Plaintiff had a MRI at the Nashville General Hospital on June 26th.[8] (Doc. 103, Ex. 5, pp. 9-10 of 10) The findings were as follows: 1) "nondisplaced subacute fracture of the greater tuberosity of the right humeral head"; 2) "[p]artial tear of the distal supraspinatus tead . . . [but no] . . . full-thickness rotator cuff tendon tear"; 3) "concern[] for an anterior labral tear"; 4) "[m]ild acromioclavicular degenerative disease." (Doc. 103, Ex. 5, p. 10 of 10) Thereafter, on July 2nd, approval was given for plaintiff to see an orthopedic surgeon for a shoulder injection and further evaluation. (Doc. 103, Ex. 2, pp. 13, 61 of 65)

Plaintiff saw Dr. Thomas Limbird, M.D., on July 24th. Doc 130, Ex. 5, p. 1 of 10) Dr. Limbird injected plaintiff's shoulder, noting that "arthoscopic debridement of this shoulder with possible screw fixation of the greater trochanteric fragment would be quite beneficial to him." (Doc. 103, Ex. 5, p. 1 of 10) Dr. Limbird noted further that he had "requested a referral . . . within the next 4 to 6 weeks."[9] (Doc. 103, Ex. 5, p. 1 of 10)

---

[8] Although it cannot be determined from the record when plaintiff was authorized to have the MRI, a CJC Progress Note dated June 10, 2014 reflects that plaintiff was advised on that date that "he ha[d] been refered [*sic*] out to get an MRI done on shoulder . . . ." (Doc. 103, Ex. 2, p. 17 of 65)

[9] It appears from plaintiff's subsequent pleadings that he had surgery on his shoulder on October 7, 2014. (Doc. 127)

In addition to the treatment/diagnostics described above, the records before the court show that plaintiff was seen at CJC medical repeatedly during the period of time at issue, and that his medications were managed, *i.e.*, added or discontinued, throughout. (*See e.g.*, Doc. 103, Ex. 2, pp. 17, 19, 21-22, 39-51, 52)

The medical records before the court establish that plaintiff received medical care at CJC from March 17th when he was first jailed through at least October 7th when, as noted above at p. 12 n. 9, surgery was performed on his shoulder. Although there is a 47-day gap in the medical records between March 21st and May 7th, as discussed above at pp. 2 and 10, plaintiff admits that he was seen at least once during this period, *i.e.*, on March 29th. This constitutes "some medical attention" under *Berryman* and *Westlake*, cited above at p. 9. Additionally, the record shows that plaintiff's allegation in the complaint that "medical will not see me . . . since May 7, 2014" is untrue. More particularly, plaintiff signed his complaint on May 13th in which the foregoing allegation is made. However, the record shows that he was seen by CJC medical on May 7th, at which time he asked that his shoulder be x-rayed, following which an x-ray was made two days later on May 9th (Doc. 103, Ex. 2, pp. 23, 37 of 65). This obvious misrepresentation in the complaint casts doubt on the veracity of plaintiff's allegations as they pertain to events during this 47-day gap.

Although he has not done so, plaintiff likely would urge the court to view the increase in the medical activity beginning on May 7th as being due to Dr. Burns responding to this lawsuit. The record does not support such a conclusion. First, as noted above at p. 3 n. 2, plaintiff mailed his complaint to the district court on May 21st – fourteen days after he was seen by CJC medical when, as noted above, he asked that an x-ray be made of his shoulder, and twelve days after that x-ray was made. Plaintiff's action two weeks after the fact would not have affected Dr. Burns' actions two weeks prior. The District Judge's order on initial review also cannot be said to have prompted Dr. Burns' actions because, as previously noted above at p. 3 n. 4, Dr. Burns was not identified as a

defendant in that order, nor was a copy of the complaint attached to that order from which such a conclusion might have been drawn. From the record before the court, it is apparent that Dr. Burns was first on notice that she was a defendant to this action on June 17th when she was served. By then, plaintiff had received the treatment described above at pp. 9-12, already been x-rayed three times, and an order entered authorizing him to have a MRI. In short, the evidence does not support the conclusion that the events of May 7th and subsequent were prompted by this lawsuit.

As shown above, plaintiff was treated by the CJC medical staff on numerous occasions at the times relevant to this action, his medications were being managed, he had three x-rays of his shoulder, and he had been scheduled for a MRI. Far from deliberate indifference to plaintiff's medical needs, it is apparent that plaintiff merely disagrees with the care that he received. As previously noted above at p. 9, where a prisoner has received some medical attention, but disputes the adequacy of his treatment, the federal courts will not second-guess the medical judgments of prison officials. Because plaintiff's deliberate indifference claim against Dr. Burns lacks an arguable basis in law or fact, that claim should be dismissed. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Plaintiff's Motion to Amend

Plaintiff alleges that CCS employee Nurse Tammy Rucks "snatched [his] right arm after surgery," and that Nurse Rucks has "threaten[ed] to poison [him] with medication." (Doc. 134, p. 1 of 3) Plaintiff also alleges that the "med call nurse refuse[s] to bring [him] any pain meds but . . . bring[s] only [a] stool soft[e]ner." (Doc. 134, p. 2 of 3) Finally, plaintiff alleges that CJC medical refuses to order an x-ray for his shoulder or provide him the necessary physical therapy for his shoulder. (Doc. 134, p. 2 of 3) Plaintiff asserts twice in his motion that "they are repeating the same thing again," with specific reference to the alleged events in March 2014 that gave rise to this lawsuit in the first place. (Doc. 134, p. 1 of 3) Although plaintiff does not name Nurse Rucks, the

13

"med call nurse," or anyone else as new defendants in his motion, he nevertheless states that this is a "New Cause of Action . . . . Pursuant to Fed. R. Civ. P. 15(c) . . . ." (Doc. 134, p. 1 of 3)

Rule 15(c) is applicable where plaintiff "changes the party or the naming of the party against whom a claim is asserted." Plaintiff has not moved to add any new defendants, nor can such an inference be liberally construed from his motion. In fact, the motion reads – in essence – that the events alleged are merely further evidence of the original claims against the original defendants, *i.e.*, "they are repeating the same thing again." Even if the court were to construe plaintiff's motion to name those identified therein, the motion does not comply with the 120-day requirement of Rule 4(m), Fed. R. Civ. P. incorporated into Rule 15(c) by reference. For these reasons, Rule 15(c) does not apply here.

Since Rule 15(c) does not apply, the Magistrate Judge looks next to Rule 15(a)(2), Fed. R. Civ. P., *Other Amendments*. Rule 15(a)(2) provides the following:

> In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

As noted above, under Rule 15(a)(2), "district courts 'should freely give leave [to a party to amend its pleadings] when justice so requires . . . .'" *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 729 (6th Cir. 2009)(citing Fed.R.Civ.P. 15(a)(2)). However, district courts may "'exercise their discretion to deny a motion for leave to amend based on 'undue delay, bad faith or dilatory motive ... [or] futility of amendment.'" *Pedreira*, 579 F.3d at 729.

Justice does not require permitting plaintiff to amend his complaint. The putative defendants identified in the motion are different from those in the original complaint, as are the facts alleged. Inasmuch as the events alleged occurred only this month, plaintiff is well within the statute of limitations to file a new lawsuit pertaining to these putative defendants and the new facts alleged. In short, plaintiff will not be prejudiced by denying his motion to amend.

Granting plaintiff's motion to amend also would cause "undue delay" in this case. Sheriff Hall and defendant Young have motions to dismiss pending, to which plaintiff has replied, and plaintiff has a motion for summary judgment pending, to which defendants have replied. To grant plaintiff's motion under Rule 15(a)(2) at this late date would delay unnecessarily the ultimate disposition of these dispositive motions and this case.

Finally, plaintiff's motion is futile. Of the original three defendants, only Sheriff Hall and defendant Young are possibly connected with the events alleged in both the original complaint and plaintiff's motion to amend. Dr. Burns is no longer employed at CJC, a fact noted as recently as July 25, 2014 – two-plus months before the events alleged in plaintiff's motion. (Doc. 38) As for Sheriff Hall and defendant Young, plaintiff fails to provide any factual allegations against either them in his motion. As previously discussed above at pp. 6-7, conclusory claims are subject to dismissal. Absent any factual allegations against Sheriff Hall and defendant Young personally, the obvious thrust of plaintiff's motion is, once again, that Sheriff Hall and defendant Young are liable for the acts and/or omissions of those in their charge. For the reasons explained above at pp. 7-8, neither Sheriff Hall nor defendant Young are liable to plaintiff under the doctrine of *respondeat superior*.

As shown above, justice does not require that plaintiff be permitted to amend his complaint, granting his motion would unduly delay the final adjudication of this case and, in any event, his motion is futile. For these reasons, his motion to amend (Doc. 134) should be denied.

### III. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that: 1) the motions to dismiss filed by Sheriff Daron Hall and defendant Patricia Young (Docs. 25, 55) be **GRANTED**; 2) this case be **DISMISSED** as to defendant Dr. Roberta Burns for failure to state a claim pursuant

to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); 3) plaintiff's motion to amend (Doc. 134) be **DENIED**; 4) all other pending motions be **TERMINATED AS MOOT**; 5) dismissal of this case count as a "**STRIKE**" under 28 U.S.C. § 1915(g); 6) acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; 7) any appeal **NOT BE CERTIFIED** as taken in good faith under 28 U.S.C. § 1915(a)(3).

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 24th day of October, 2014.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge